UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. _____

UNITED STATES SECURITIES AND EXCHANGE COMMISSION,

          Plaintiff,

v.

ICON WORLD CORPORATION (dba ICON WORLD RESOURCES and ICON
      CORPORATION)
SUNCO RESOURCES, LLC,
JEFFREY M. ZAMORSKY,
JESSE ANTHONY "TONY" AGUILAR, and
CHRISTINE M. ZAMORSKY (aka CHRISTINE M. AGUILAR),

          Defendants.

---

## COMPLAINT

---

Plaintiff, United States Securities and Exchange Commission ("SEC"), states and alleges as follows against Defendants:

## I.  SUMMARY OF THE CASE

1.      From approximately May 2007 through the present, Jeffrey M. Zamorsky ("Jeff Zamorsky"), Jesse Anthony Aguilar ("Tony Aguilar"), and Christine M. Zamorsky ("Christine Zamorsky"), through their entities Icon World Corporation ("Icon") and its affiliate SUNCO Resources, LLC ("SUNCO"), have raised more than $1 million from more than twenty-three investors in Colorado and in various other states through the fraudulent and unregistered sale of interests in oil and gas wells.

2.      Defendants represented that investors were purchasing undivided fractional interests in specific oil and gas wells in Ohio, Michigan, and Colorado, and that offering proceeds would be used to develop these well sites.  However, Icon and SUNCO did not own any interest in the oil and gas wells, did not have any rights to sell interests on behalf of the rightful owners of the wells, and did not pay funds to contractors necessary to develop the wells.  The Defendants also failed to disclose to investors that two of Icon and SUNCO's three principals – Tony Aguilar and Christine Zamorsky -- were convicted felons, and that Tony Aguilar had conducted a previous oil and gas offering fraud in Texas during 1999 and 2000.

3.      Jeff Zamorsky, Tony Aguilar, and Christine Zamorsky created the false and misleading Ohio, Michigan and Colorado offering materials by repeatedly obtaining confidential information from legitimate oil and gas contractors that owned interests in oil and gas wells or prospects.  In each instance, one or more of the defendants approached the contractor, and indicated that Icon sought to purchase an interest in specific wells.  Icon never consummated any agreement to purchase an interest in any wells or prospects.  Instead, after obtaining the contractor's confidential information during preliminary negotiations, and without the contractors' permission or knowledge, Icon and SUNCO used the confidential information to prepare false and misleading offering materials.  The confidential information obtained during negotiations was often copied and placed in the offering materials, making it appear that Icon and SUNCO owned interests in the specific wells or prospects.

4.      Jeff Zamorsky, Tony Aguilar, and Christine Zamorsky personally directed the sale of Icon and SUNCO securities through boiler room sales representatives through at least three sales teams located, during the relevant times, in Colorado Springs, Colorado, and Houston, Texas.

Jeff Zamorsky, Tony Aguilar, and/or Christine Zamorsky set up each office, hired unregistered sales representatives, and provided them with prospective investor lead lists and the false and misleading written offering materials. The Icon and SUNCO sales representatives then cold-called investors nationwide, and mailed them the false and misleading offering materials.

5.     The Ohio, Michigan and Colorado offering materials promised investors profits resulting from oil and gas well production. When investors inquired about why they had not received any profits on their investments, Jeff Zamorsky, Tony Aguilar, and Christine Zamorsky initially provided their sales representatives with a laundry list of phony excuses to communicate to investors regarding purported operational delays. But by late March 2008, each of the Icon and SUNCO sales representatives had quit, many because they were uncomfortable with the obvious inaccuracy of these excuses, or had been fired for asking too many questions. Since that time, Jeff Zamorsky and Tony Aguilar have made numerous, additional misrepresentations directly to investors stating that the drilling of Icon and SUNCO's oil and gas wells had been delayed, but otherwise would proceed as planned.

6.     To date, Icon and SUNCO investors have not received any profits from any oil and gas well production, and Icon and SUNCO have refused numerous investor requests for refunds. Instead, Jeff Zamorsky and Tony Aguilar have misrepresented to some of the Ohio offering investors that their funds were converted to Icon and SUNCO's non-existent oil and gas projects in Michigan and Colorado.

7.     None of the individual defendants was associated with a registered broker-dealer during the time of the conduct alleged herein.

8.      Icon and SUNCO's offerings of fractional, undivided interests in oil and gas projects were not registered with the SEC or exempt from registration.

## II.  JURISDICTION AND VENUE

9.      The SEC brings this civil enforcement action seeking a permanent injunction, disgorgement plus prejudgment interest, and civil penalties for violations of Sections 5(a), 5(c) and 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. §§ 77e(a), 77e(c), 77q]; Sections 10(b) and 15(a) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. §§78j(b) and 78o(a)] and Rule 10b-5 under the Exchange Act [17 C.F.R. §240.10b-5].

10.     The Court has jurisdiction pursuant to Section 22(a) of the Securities Act [15 U.S.C. §77v(a)] and Sections 21(d), 21(e) and 27 of the Exchange Act [15 U.S.C. §§ 78u (d) and (e) and 78aa].

11.     In connection with the acts described in this Complaint, the Defendants have used the mails, other instruments of communication in interstate commerce, and means or instrumentalities of interstate commerce.

12.     Venue lies in this Court pursuant to 15 U.S.C. §§ 77u(a) and 78aa, and 28 U.S.C. §1391(b)(1) & (2).  During the period of conduct alleged herein, Icon and SUNCO maintained offices in Colorado, and many of the acts and practices described in this Complaint occurred in Colorado.  Moreover, upon information and belief, Defendant Christine Zamorsky is a resident of Castle Rock, Colorado.

## III.  DEFENDANTS

13.     **Icon World Corporation ("Icon")**, is a Nevada corporation, with offices in Phoenix, Arizona.  During the period of conduct alleged herein, Icon maintained offices in Colorado

Springs, Colorado, and Chandler, Arizona.  Jeff Zamorsky is Icon's president, secretary, treasurer, and sole director.  As alleged herein, Tony Aguilar and Christine Zamorsky also functioned, and held themselves out to the public, as Icon officers.  Icon has done business using the names Icon World Resources, and Icon Corporation, and has held itself out to the public as an affiliate of SUNCO Resources, LLC.  Upon information and belief, Icon does not have any actual business operations other than selling securities.  Icon has not registered any securities or offerings with the SEC.

14.     **SUNCO Resources, LLC ("SUNCO")** is a Wyoming limited liability company, with offices in Phoenix, Arizona.  During the period of conduct alleged herein, SUNCO maintained offices in Colorado Springs, Colorado, and Chandler, Arizona.  Jeff Zamorsky is SUNCO's manager.  However, as alleged herein, Tony Aguilar and Christine Zamorsky also functioned, and held themselves out to the public as SUNCO principals.  SUNCO has held itself out to the public as an affiliate of Icon.  Upon information and belief, SUNCO does not have any actual business operations other than selling securities.  SUNCO has not registered any securities or offerings with the SEC.

15.     **Jeffrey "Jeff" M. Zamorsky**, age 32, is the president of Icon and the manager of SUNCO.  Upon information and belief, Jeff Zamorsky is a resident of Queen Creek, Arizona. Jeff Zamorsky has never held any securities licenses, nor been affiliated with any broker-dealer registered with the SEC.

16.     **Jesse Anthony ("Tony") Aguilar**, age 41, is a resident of Houston, Texas.  He functioned, and held himself out to the public, as an officer of Icon and a principal of SUNCO. From 1992 through 1997, Tony Aguilar was a registered representative associated with various

broker-dealers registered with the SEC.  In November 2001, Aguilar pled guilty in the United

States District Court for the Western District of Texas, U.S. v. Jesse Anthony Aguilar, W. Dist.

Texas, No. A-01-CR-227(1)-SS (Nov. 8, 2001), to conspiracy to commit mail fraud, wire fraud,

and securities fraud for misappropriating more than $1.2 million from investors in connection

with an unrelated oil and gas offering fraud.  He was sentenced to 51 months in federal prison

and ordered to pay restitution of more than $1.2 million.  Upon information and belief, Tony

Aguilar was released from prison in late 2005, and he remains on court-supervised release.

17.     **Christine M. Zamorsky (aka Christine M. Aguilar)**, age 39, is the vice-president of

Icon.  She also functioned, and held herself out to the public, as a principal of SUNCO.  Upon

information and belief, Christine Zamorsky is a resident of Castle Rock, Colorado.  Upon

information and belief, Christine Zamorsky is or was married to Tony Aguilar, and is the sister

of Jeff Zamorsky.  Christine Zamorsky has never held any securities licenses nor been affiliated

with a broker-dealer registered with the SEC.  In March 2002, Christine Zamorsky, then known

as Christine Aguilar, pled guilty to a felony for knowingly using a false social security number to

obtain credit.  The State of Texas v. Christine M. Aguilar, Williamson County, No. 01-787-K26

(Mar. 7, 2002).  Her two-year prison sentence was initially suspended while she completed a

five-year court-supervised release.  However, in April 2004, Christine Zamorsky violated the

terms of her supervised release and she was sentenced to one year in prison.

### IV.  FACTUAL ALLEGATIONS

**A.  Background:  Tony Aguilar and Christine Zamorsky Were Previously Involved In An Oil and Gas Offering Fraud**

18.     From approximately June 1999 through October 2000, Tony Aguilar and Christine

Zamorsky, then known as Christine Aguilar, were directors of Nortex Exploration, Inc.

("Nortex").  Nortex raised more than $1.2 million from investors based upon representations that the company would use investor funds to drill and complete oil and gas wells in Texas.

19.     Tony Aguilar told investors that Nortex had obtained oil and gas mineral leases for four specific wells.  Nortex paid some returns to investors, and Tony Aguilar told investors that these payments represented profits resulting from the drilling of the first two wells.

20.     However, Nortex was a Ponzi scheme.  The company had never obtained any oil or gas leases or drilled any wells.  Instead, Tony and Christine Aguilar used investor funds to make Ponzi payments to other investors, and for items unrelated to the exploration of oil and gas, including jewelry, furniture for their residence, and cosmetic surgery for Christine Aguilar.

21.     In November 2001, based upon his orchestration of the Nortex oil and gas offering fraud, Tony Aguilar was indicted in the Western District of Texas for conspiracy to commit fraud.  In November 2001, Tony Aguilar pled guilty based on a plea agreement that stipulated, among other things, that the United States would not prosecute Christine Aguilar for her role in the Nortex oil and gas offering fraud.

22.     In April 2002, Tony Aguilar was sentenced to 51 months in federal prison, three years of supervised release following imprisonment, and restitution of more than $1.2 million.  Tony Aguilar was released from federal prison in approximately late 2005, and upon information and belief, he remains on supervised release.  Tony Aguilar has been paying $100 per month toward his restitution obligation in the Nortex offering fraud, which, with interest, now currently totals more than $1.4 million.

**B.  Defendants Created Offering Materials Falsely Claiming That Icon and SUNCO Could Sell Interests in Specific Oil and Gas Wells in Ohio, Michigan and Colorado**

### i.        The Ohio Wells Offering Materials

23.     In June 2006, Jeff Zamorsky incorporated Icon in Nevada.

24.     In November 2006, Jeff Zamorsky contacted Beck Energy Corporation ("Beck Energy"), a small oil and gas exploration firm that had obtained oil and natural gas leases, and drilled 78 wells from 2000-2006 in Monroe County, Ohio.  Jeff Zamorsky told Beck Energy that Icon sought to invest in or purchase approximately a twenty-five to fifty percent interest in five to ten of Beck Energy's oil and gas wells in Monroe County (hereinafter "Beck's Ohio Wells").

25.     As part of its preliminary negotiations with Icon, in December 2006, Beck Energy provided Jeff Zamorsky with certain proprietary materials regarding Beck's Ohio Wells, including a two-page map showing the specific locations of 22 of its wells in Center Township and Green Township, Monroe County, Ohio.

26.     Jeff Zamorsky continued preliminary negotiations with Icon during the first few months of 2007, by periodically calling and meeting once in person with Beck Energy's president. However, Icon never reached any written or verbal agreements to acquire any interest in Beck's Ohio Wells.  Icon stopped discussing a possible purchase with Beck Energy by the fall of 2007, and never paid any funds to Beck Energy.

27.     Without Beck Energy's knowledge or authorization, from at least May through December 2007, Icon and SUNCO offered investors fractional interests in ten of Beck's Ohio Wells (hereinafter "the Ohio Wells Offering").

28.     The Ohio Wells Offering materials purportedly sought to raise millions of dollars by selling fractional interests in 10 Ohio Wells.  The materials promised each unit-holder a specific percentage working interest (1.53% or 2.2%) and net revenue interest (1.28% or 1.85%) in the wells' future production.

29.     Although the Ohio Wells Offering materials did not specifically mention Beck Energy, they included the two-page map showing the specific locations of 22 of Beck's Ohio Wells in Center Township and Green Township, Monroe County, Ohio.   Jeff Zamorsky had obtained these materials through his negotiations with Beck Energy.  In one iteration, the offering materials specifically represented that Icon had "contracted" to develop these wells.

30.     The Ohio Wells Offering materials indicated that investor funds would be used to "drill, test, and if warranted, complete" the Ohio wells.

31.     Icon sent some investors an "executive summary" of the Ohio Wells Offering which stated, among other things, that "[t]he value of our [Icon's] leases in Monroe County is currently in excess of $3 million."

32.     Icon also sent some investors a "project summary" of the Ohio Wells Offering which claimed, among other things, that "[i]n the last 3 years, The Company [Icon] participated in drilling 41 wells in 2004, 55 wells in 2005, and 79 wells in 2006 with no dry holes – 100% of the holes drilled were productive."

33.     Jeff Zamorsky, Tony Aguilar, and Christine Zamorsky orchestrated the fraudulent Ohio Wells Offering by, among other things, preparing, sending and/or causing to be sent to investors false and misleading private placement memoranda and other offering materials.  Jeff Zamorsky,

Tony Aguilar, and Christine Zamorsky knew that the Ohio Wells Offering was fraudulent because, among other things, the written offering materials:

    a.   Falsely implied that Icon owned interests in ten of Beck's Ohio Wells;

    b.   Falsely implied that Icon had rights to sell fractional interests in Beck's Ohio Wells to investors;

    c.   Misrepresented that Icon held leases in Monroe County, Ohio currently valued in excess of $3 million;

    d.   Misrepresented that Icon had participated in drilling 175 oil and gas wells between 2004 and 2006, with no "dry holes";

    e.   Misrepresented that Icon would use investor funds to "drill, test, and if warranted, complete" the Ohio wells; and

    f.   Failed to disclose in the offerings that two of three principals of Icon, Tony Aguilar and Christine Zamorsky, were convicted felons, and that Tony Aguilar's conviction related to a previous oil and gas offering fraud.

34.     At the direction of Jeff Zamorsky and Christine Zamorsky, Icon sales representatives also made numerous misleading statements to enhance the attractiveness of the Ohio Wells Offering, including:

    a.   Icon owned several mineral leases in the area of Monroe County, Ohio, where it planned to drill ten wells;

    b.   Based on the performance of wells in the vicinity, Icon's Ohio Wells were very promising, with little chance of drilling "dry holes," or a "sure bet," with a "99% chance of success".

  c. Investors would earn back 100% of a $22,500 investment within a year in profits from the production of Icon's Ohio Wells;

  d. Icon had its own drilling and production equipment so it would not have to rely or wait on any third parties to drill the wells;

  e. The drilling of Icon's Ohio Wells was to begin as early as July 2007, the wells would begin pumping as early as August of 2007, and investors would begin receiving income from their investments as early as August or September 2007; and

  f. Icon already entered into an agreement with Beck Energy to operate Icon's Ohio Wells and Beck Energy had experience operating other producing wells in the area.

35. An individual named "Jack," Icon's supposed national sales manager based in Houston, also instructed Icon sales representatives to make the statements described in the preceding paragraph to investors.  Upon information and belief, "Jack" was an alias used by Tony Aguilar.

  **ii.** **The Michigan Well Offering Materials**

36. In September 2007, Jeff Zamorsky formed SUNCO in Wyoming.

37. Later in September 2007, Christine Zamorsky and Jeff Zamorsky contacted Borders Exploration, LLC ("Borders"), a small oil and gas exploration firm located in Michigan that had previously acquired a lease for a prospective oil and gas well site in Oakland County, Michigan (hereinafter "Borders' Michigan Prospect").  Christine Zamorsky and Jeff Zamorsky claimed that Icon was interested in purchasing all or an interest in Borders' Michigan Prospect.

38.     As part of its preliminary negotiations with Icon, in approximately October or November 2007, Borders provided Christine Zamorsky and Jeff Zamorsky with confidential seismic studies and other information demonstrating the likelihood of a sizeable oil and gas deposit at the site of Borders' Michigan Prospect.

39.     On November 6, 2007, Borders entered into a Letter Agreement with Icon, whereby Icon tentatively agreed to purchase an interest in Borders' Michigan Prospect for $721,425.  Because Jeff Zamorsky indicated that Icon was unable to pay on November 6, the parties verbally modified the agreement to require Icon to pay:  (1) a non-refundable deposit of $50,000 on November 14, 2007; (2) $500,000 on or before December 14, 2007; and (3) the balance of $171,425 upon the commencement of drilling of Borders' Michigan Prospect.  The parties further agreed that, if Icon failed to make any of these payments, the proposed sale was void.

40.     Icon paid the $50,000 non-refundable deposit to Borders on or about November 14, 2007. Icon did not make any other payments.  Between December 2007 and February 2008, Jeff Zamorsky made promises to Borders that Icon would pay the purchase price, but Icon never paid.

41.     On March 5, 2008, Borders sent Jeff Zamorsky an email stating in relevant part that, "[i]f we do not hear from you in 48 hrs we will assume that you [Icon] no longer have an interest in the Prospect [Borders' Michigan Prospect]."   Icon never responded to Borders's March 5 email. Borders therefore considered Icon's option to purchase Borders' Michigan Prospect to be terminated.

42.     Without Borders' knowledge or authorization, from at least November 2007 through March 2008, SUNCO, holding itself out to investors as a subsidiary of Icon, offered investors fractional interests in Borders' Michigan Prospect (hereinafter the "Michigan Well Offering").

43.     Some offering materials offered an investment in only Borders' Michigan Prospect, while other offering materials offered a combined investment in both Borders' Michigan Prospect, and ten of Beck's Ohio Wells.  Because the combined Ohio and Michigan Wells Offering was merely a continuation of the Ohio Wells Offering, it was fraudulent as alleged herein in paragraphs 23 through 35.

44.     The Michigan Well Offering materials purportedly sought to raise millions by selling fractional interests in Borders' Michigan Prospect.  The materials promised each unitholder a specific percentage of the total working interest (3.57% or 3.45%) and a specific percentage of the total net revenue interest (2.07% or 2%) in the wells' future production.

45.     Although the Michigan Well Offering materials did not reference Borders by name, the materials appended to the offering contained the detailed seismic information that Christine Zamorsky and Jeff Zamorsky had obtained from Borders during negotiations.  The materials demonstrated the likelihood of a sizeable oil and gas deposit at the proposed site of Borders' Michigan Prospect.

46.     The Michigan Well Offering materials assured investors that their funds would be used for "drilling, testing, completing, and equipping" Borders' Michigan Prospect.

47.     Jeff Zamorsky, Tony Aguilar, and Christine Zamorsky orchestrated the fraudulent Michigan Well Offering by, among other things, preparing, sending and/or causing to be sent to investors false and misleading private placement memoranda and other offering materials.  Jeff

Zamorsky, Tony Aguilar, and Christine Zamorsky knew that the Michigan Well Offering was fraudulent because, among other things, the written offering materials:

    a.  Falsely implied that Icon and SUNCO owned an interest in Borders' Michigan Prospect;

    b.  Falsely implied that Icon and SUNCO had rights to sell fractional interest in Borders' Michigan Prospect to investors;

    c.  Misrepresented that Icon and SUNCO would use investor funds for "drilling, testing, completing, and equipping" Borders' Michigan Prospect; and

    d.  Failed to disclose in the offerings that two of three principals of Icon and SUNCO, Tony Aguilar and Christine Zamorsky, were convicted felons, and that Tony Aguilar's conviction related to a previous oil and gas offering fraud.

### iii.  The Colorado Wells Offering Materials

48.    In early December 2007, Tony Aguilar contacted PetroHunter Energy Corporation ("PetroHunter"), an oil and gas exploration and production company that had previously acquired leases for certain properties and drilled fourteen oil and gas wells in Garfield County, Colorado (hereinafter "PetroHunter's Colorado Wells").  Tony Aguilar told PetroHunter that Icon was interested in acquiring some portion or all of PetroHunter's Colorado Wells.

49.    As part of its preliminary negotiations with Icon, in December 2007, pursuant to a non-disclosure agreement, PetroHunter provided Jeff Zamorsky and Tony Aguilar with certain confidential materials regarding PetroHunter's Colorado Wells, including well logs and other confidential information estimating the commercial viability of two of PetroHunter's Colorado Wells.

50.     On January 4, 2008, PetroHunter entered into a non-binding Letter Agreement with Icon. The Letter Agreement called for Icon immediately to pay PetroHunter a $1 million deposit to preserve its exclusive right to negotiate the purchase of a percentage of PetroHunter's Colorado Wells.  The Letter Agreement further called for the parties to close a purchase transaction on or before January 14, 2008.

51.     From January 4 through January 8, 2008, Tony Aguilar and Jeff Zamorsky made but broke promises to pay the $1 million deposit.  On January 8, 2008, PetroHunter sent an email to Tony Aguilar and Jeff Zamorsky advising them that there was no agreement unless PetroHunter received at least a substantial portion of the $1 million deposit by January 10, 2008.

52.     Icon never responded to this email, and PetroHunter considered its dealings with Icon terminated as of January 10, 2008.  Icon never paid PetroHunter any funds.

53.     Without PetroHunter's knowledge or authorization, from at least December 2007 through March 2008, SUNCO, holding itself out to investors as a subsidiary of Icon, purported to offer working interests in two of PetroHunter's Colorado Wells (hereinafter "the Colorado Wells Offering").

54.     Some offering materials offered an investment in only two of PetroHunter's Colorado Wells, while other offering materials offered in investment in both Borders' Michigan Prospect, described above in paragraphs 37 through 47 and two of PetroHunter's Colorado Wells. Because the combined Michigan and Colorado Wells Offering was merely a continuation of the Michigan Well Offering, it was fraudulent as alleged herein in paragraphs 37 through 47.

55.     The Colorado Wells Offering materials purportedly sought to raise millions by selling fractional interests in two of PetroHunter's Colorado Wells.  The materials promised each

unitholder a specific percentage of the total working interest (2.40%) and net revenue interest (1.80%) in the future production of two of PetroHunter's Colorado Wells.

56.     The Colorado Wells Offering materials specifically stated that SUNCO had reached an agreement to use PetroHunter as its "operator/contractor" for the Colorado Wells.  In addition, SUNCO provided some investors with the well logs that Jeff Zamorsky and Tony Aguilar had obtained from PetroHunter through negotiations, which estimated the commercial viability of two of PetroHunter's Colorado Wells.

57.     The Colorado Wells Offering materials again assured investors that their funds would be used to "frac, complete, and pipeline" two of PetroHunter's Colorado wells.

58.     Jeff Zamorsky, Tony Aguilar, and Christine Zamorsky orchestrated the fraudulent Colorado Wells Offering by, among other things, preparing, sending and/or causing to be sent to investors false and misleading private placement memoranda and other offering materials.  Jeff Zamorsky, Tony Aguilar, and Christine Zamorsky knew that the Colorado Wells Offering was fraudulent because, among other things, the written offering materials:

     a.  Falsely implied that that SUNCO owned an interest in PetroHunter's Colorado Wells;

     b.  Falsely implied that SUNCO had rights to sell fractional interests in PetroHunter's Colorado Wells to investors;

     c.  Misrepresented that SUNCO had a contract with PetroHunter to drill, complete or otherwise develop PetroHunter's Colorado Wells;

     d.  Misrepresented that Icon and SUNCO would use investor funds to "frac, complete, and pipeline" two of PetroHunter's two Colorado wells;

    e.   Failed to disclose in their offerings that two of three principals of Icon and SUNCO, Tony Aguilar and Christine Zamorsky, were convicted felons, and that Tony Aguilar's conviction related to a previous oil and gas offering fraud.

59.    Icon, SUNCO, Jeff Zamorsky, Tony Aguilar, and Christine Zamorsky conducted the Ohio, Michigan and Colorado Wells offerings as a scheme to defraud investors and as a fraudulent enterprise in connection with the sale of securities.

60.    Icon, SUNCO, Jeff Zamorsky, Tony Aguilar, and Christine Zamorsky conducted the Ohio, Michigan and Colorado Wells offerings as a practice, and courses of business that operated as a fraud in connection with the offer and sale of securities.

61.    The defendants obtained money from investors in the Ohio, Michigan and Colorado Wells offerings by means of their untrue and materially misleading statements of material facts about, among other things, Icon and SUNCO's ownership interests in specific oil and gas wells, Icon and SUNCO's rights to sell fractional interests in specific oil and gas wells, Icon and SUNCO's ability to drill and complete oil and gas wells, and the use of investors' funds.  The defendants also omitted to state material facts including, among other things, the fact that two of three principals of Icon and SUNCO, Tony Aguilar and Christine Zamorsky, were convicted felons, and that Tony Aguilar's conviction related to a previous oil and gas offering fraud.

**C.  Jeff Zamorsky, Tony Aguilar, and Christine Zamorsky Established and Directed The Icon and SUNCO Unregistered Securities Sales Boiler Rooms**

62.    From approximately May 2007 through at least March 2008, Jeff Zamorsky, Tony Aguilar, and Christine Zamorsky sold Icon and SUNCO securities through at least three distinct

groups of sales representatives.  Two of these operations were based in Colorado Springs, Colorado, and the other in Houston, Texas.

63.    Each of the groups of sales representatives operated in the same manner:

    a.    Jeff Zamorsky, Tony Aguilar, or Christine Zamorsky hired oil and gas sales representatives who were not associated with a broker-dealer registered with the SEC;

    b.    Jeff Zamorsky, Tony Aguilar, and Christine Zamorsky leased office space for the sales representatives, and provided them with lead lists and false and misleading offering materials for the Ohio, Michigan and Colorado oil and gas wells;

    c.    The sales representatives used the lead lists to make cold-call telephone solicitations of prospective investors, then sent interested investors the false and misleading offering materials for the Ohio, Michigan and Colorado oil and gas wells;

    d.    Jeff Zamorsky, Tony Aguilar, and Christine Zamorsky directed the payment of sales representatives at a base salary, plus sales commissions ranging from approximately 10%-13% of investor funds raised;

    e.    Tony Aguilar sometimes spoke by phone with investors to "close" the sale of the investment, and received an "override" sales commission percentage for the sale of investments that he "closed";

    f.    Tony Aguilar and Jeff Zamorsky also called some of the existing investors to suggest they increase their investment in their current well project or convert their investment into other non-existent well projects; and

g.   When sales representatives received investor checks, they forwarded them to Jeff

Zamorsky and Christine Zamorsky at Icon and SUNCO's Arizona offices.

64.   Christine Zamorsky established the first Icon sales office in Colorado Springs in approximately May 2007, when she hired a group of five experienced oil and gas sales representatives away from another oil and gas firm.  Christine and Jeff Zamorsky then leased Colorado Springs office space, and provided lead lists and Ohio Wells offering materials to the sales representatives.

65.   In approximately late September 2007, Icon's five Colorado Springs sales representatives confronted Jeff Zamorsky in a face-to-face meeting regarding various investor questions about Icon's Ohio Wells offering.  After admitting that Icon did not own any drilling rigs, Jeff Zamorsky refused to answer any additional questions.  He abruptly fired the entire sales staff, ordering them to gather only their personal effects and to immediately leave Icon's offices.

66.   After the collapse of the first Colorado Springs sales operations, Tony Aguilar began hiring and supervising sales representatives at new Icon and SUNCO offices in Houston.  By October 2007, Tony Aguilar had hired at least seven Houston sales representatives who sold the Ohio and Michigan Wells Offerings to investors.

67.   The Houston sales office experienced significant turnover.  In late November 2007, at Tony Aguilar's request, the single remaining Houston sales representatives relocated with Aguilar to a second sales office in Colorado Springs.

68.   Between approximately November 2007 and February 2008, Tony Aguilar supervised the hiring of at least six additional sales representatives in the new Colorado Springs sales office. The new group of sales representatives sold the Michigan and Colorado Wells Offerings.

69.     By approximately November 2007, many of Icon's Ohio Well investors were complaining to the sales representatives about not receiving proceeds.  At the direction of Jeff Zamorsky, Tony Aguilar, and Christine Zamorsky, the sales representatives convinced many of these investors to "exchange" or "convert" their investments to the Michigan or Colorado Wells Offerings.  While some investors were offered "conversions" for no additional fee, others paid to convert their interests.  On other occasions, Tony Aguilar and Jeff Zamorsky personally solicited investors to convert their investment in the Ohio Wells Offering to the Michigan or Colorado Wells Offerings.

70.     In February 2008, Tony Aguilar abruptly disappeared from the Colorado Springs office and ceased direct communications with the sales representatives.  After that time, Jeff and Christine Zamorsky continued managing the Colorado Springs sales representatives from their office in Arizona.

71.     Although Tony Aguilar was not physically present in the Colorado Springs sales office after February 2008, he remained involved in the operation.  Substantive messages left by Colorado Springs sales representatives on Tony Aguilar's cell phone were returned by Jeff Zamorsky or Christine Zamorsky.

72.     In late February 2008, an investor contacted the Colorado Springs sales office and told the sales representatives that PetroHunter had denied that Icon had any interest in PetroHunter's Colorado Wells.  Thereafter, by the end of March 2008, all of the Colorado Springs sales representatives and the secretary had quit because Jeff Zamorsky, Tony Aguilar, and Christine Zamorsky stopped responding to questions about Icon's supposed operations in Ohio, Michigan and Colorado.

**D.  Defendants are Continuing the Fraudulent Scheme By Misrepresenting to Investors That Operations Have Been Delayed, But Drilling Will Proceed As Planned**

73.     Throughout the offerings of the Icon and SUNCO securities, Jeff Zamorsky and Tony Aguilar have personally communicated with investors, making numerous misrepresentations that the drilling of Icon and SUNCO's oil and gas wells had been delayed, but otherwise were proceeding as planned.

74.     Jeff Zamorsky and Tony Aguilar's communications with investors continued after March 2008, because each of the Icon and SUNCO sales representatives had either quit, many because they were uncomfortable with the obvious inaccuracy of excuses they were provided, or they were fired for asking too many questions.  For example, between November 2007 and April 2008, Jeff Zamorsky and/or Tony Aguilar knowingly misrepresented to investors that drilling would proceed as planned after:

      a.  Icon resolved issues with a new business partner in the Ohio Wells;

      b.  Weather improved in Ohio;

      c.  the states issued drilling permits for the Michigan and Colorado sites; or

      d.  the conclusion of hunting season in Colorado.

75.     Jeff Zamorsky, Tony Aguilar, and Christine Zamorsky also told investors that their funds were being held in escrow pending commencement of the projects.  Many investors have requested, but have not received, refunds from Icon and SUNCO.

76.     Because Icon and SUNCO do not have any rights to drill for oil and gas in any of the specific wells or prospects sold to investors, upon information and belief, the Defendants have misappropriated investor funds for purposes unrelated to oil and gas exploration and production.

**E.  Icon and SUNCO's Ohio, Michigan and Colorado Offerings Constituted the Sale of
Securities in Unregistered Transactions**

77.     Section 2(a)(1) of the Securities Act defines a "security" to explicitly include "fractional
undivided interests in oil, gas, or other mineral rights."

78.     Section 3(a)(10) of the Exchange Act defines a "security" to include any "certificate of
interest or participation in any . . . oil, gas, or other mineral royalty or lease[.]"

79.     Icon and SUNCO sold working interests in oil and gas wells to investors.  These working
interests also purportedly carried net revenue interests in the future profits of the well leases.  As
a result, these investments were securities under the definitions in both the Securities Act and the
Exchange Act.

80.     The interests Icon and SUNCO sold also qualify as securities under Section 2(a)(1) of the
Securities Act and Section 3(a)(10) of the Exchange Act because they are investment contracts.
The interests Icon and SUNCO sold were investment contracts because investors made an
investment of money in a common enterprise with an expectation of profits to be derived solely
from the efforts of the promoter or a third party.

81.     Between May 2007 and March 2008, the Icon and SUNCO offerings raised more than $1
million from at least 23 investors in at least 11 states.

82.     Individual investors sent money to Icon and SUNCO by wiring funds to designated bank
accounts or mailing in checks.  They expected their investments to be pooled with the funds of
other investors in the well operations.  Investors anticipated returns based on the future
production of oil and gas wells.  Investors expected the profits to come solely from the efforts of

Icon, SUNCO, and their purported contractors, who would develop the oil and gas well sites. The investors were not required or expected to do anything other than provide funds.

83.     The Defendants offered and sold securities to investors in the form of Icon and SUNCO "fractional undivided interests in oil and gas rights," "certificates of interest or participation in oil, gas, or other mineral royalty or leases," or investment contracts, using the means or instruments of interstate commerce, including but not limited to telephones, the Internet, commercial couriers, and the mails.

84.     No registration statement was in effect and no registration statement was filed with the SEC for the offers and sales of securities of Icon or SUNCO.

**F.   Jeff Zamorsky, Tony Aguilar, and Christine Zamorsky Acted As Unregistered Brokers**

85.     Section 3(a) (4) of the Exchange Act defines a "broker" as any person who is engaged in the business of effecting transactions in securities for the account of others.  Section 3(a)(5) of the Exchange Act defines a "dealer" as any person engaged in the business of buying and selling securities for the person's own account through a broker or otherwise.  Section 15(a)(1) of the Exchange Act prohibits a broker or dealer from using jurisdictional means such as the telephone or mails to effect transactions in securities unless the broker or dealer is registered with the SEC.

86.     Jeff Zamorsky, Tony Aguilar, and Christine Zamorsky used the telephone and the mails to effect purchases and sales of the interests in Icon and SUNCO, which were securities, for the accounts of the investors.

87.     None of the defendants was affiliated with a broker-dealer registered with the SEC during the time in which he or she sold interests in Icon and SUNCO to investors.

88.     Tony Aguilar actively solicited investors to purchase securities in telephone conversations with investors, as well as other means.

89.     Tony Aguilar received transaction-based compensation in the form of a percentage override commission based on the amount of funds he had a role in raising.

90.     Jeff Zamorsky, Tony Aguilar, and Christine Zamorsky organized the securities sales operations of Icon and SUNCO.  Each of them helped prepare Icon and SUNCO offering materials, hired and supervised sales representatives, and directed the payment of sales representatives in the form of a 10%-13% commission.  Through these activities, Jeff Zamorsky, Tony Aguilar, and Christine Zamorsky acted as unregistered brokers.

**FIRST CLAIM FOR RELIEF**
**Fraud - - Violations of Securities Act Section 17(a)(1)**
**[15 U.S.C. § 77q(a)(1)]**

91.     The SEC incorporates the allegations of paragraphs 1 through 90 as if fully set forth herein.

92.     Defendants Icon, SUNCO, Jeff Zamorsky, Tony Aguilar, and Christine Zamorsky, directly and indirectly, with scienter, by use of the means or instruments of transportation or communication in interstate commerce or by use of the mails, employed a device, scheme or artifice to defraud in the offer or sale of securities.

93.     Defendants Icon, SUNCO, Jeff Zamorsky, Tony Aguilar, and Christine Zamorsky violated and unless restrained and enjoined will in the future violate Section 17(a)(1) of the Securities Act [15 U.S.C. § 77q(a)(1)].

**SECOND CLAIM FOR RELIEF**
**Fraud – Violations of Securities Act Sections 17(a)(2) and 17(a)(3)**
**[15 U.S.C. §§ 77q(a)(2) and (3)]**

94.     The SEC incorporates the allegations of paragraphs 1 through 90 as if fully set forth herein.

95.     Defendants Icon, SUNCO, Jeff Zamorsky, Tony Aguilar, and Christine Zamorsky, in the offer or sale of securities, by the use of the means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly obtained money or property by means of untrue statements of material facts or omissions of material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

96.     Defendants Icon, SUNCO, Jeff Zamorsky, Tony Aguilar, and Christine Zamorsky engaged in transactions, practices or courses of business which operated as a fraud or deceit upon the purchaser of securities.

97.     Defendants Icon, SUNCO, Jeff Zamorsky, Tony Aguilar, and Christine Zamorsky violated, and unless restrained and enjoined will in the future violate Sections 17(a)(2) and 17(a)(3) of the Securities Act [15 U.S.C. §§ 77q(a)(2) and (3)].

**THIRD CLAIM FOR RELIEF**
**Fraud – Violations of Exchange Act Section 10(b) and Rule 10b-5 Thereunder**
**[15 U.S.C. §§ 78j(b) and 17 C.F.R. § 240.10b-5]**

98.     The SEC incorporates the allegations of paragraphs 1 through 90 as if fully set forth herein.

25

99.     Defendants Icon, SUNCO, Jeff Zamorsky, Tony Aguilar, and Christine Zamorsky, acting with scienter, by use of means or instrumentalities of interstate commerce or of the mails, or of any facility of a national securities exchange, used or employed, in connection with the purchase or sale of a security, a manipulative or deceptive device or contrivance in contravention of the rules and regulations of the SEC; employed devices, schemes or artifices to defraud; made untrue statements of material fact or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or engaged in acts, practices or courses of business which operated or would operate as a fraud or deceit upon any person, in violation Section 10(b) of the Exchange Act and Rule 10b-5 thereunder.  [15 U.S.C. §§ 78j(b) and 17 C.F.R. § 240.10b-5].

100.    Defendants Icon, SUNCO, Jeff Zamorsky, Tony Aguilar, and Christine Zamorsky violated, and unless restrained and enjoined will in the future violate Sections 10(b) and Rule 10b-5 of the Exchange Act [15 U.S.C. §§ 78j(b) and 17 C.F.R. § 240.10b-5].

### FOURTH CLAIM FOR RELIEF
### Violations of Sections 5(a) and 5(c) of the Securities Act
### [15 U.S.C. §§ 77e(a) and (c)]

101.    The SEC incorporates the allegations of paragraphs 1 through 90 as if fully set forth herein.

102.    Defendants Icon, SUNCO, Jeff Zamorsky, Tony Aguilar, and Christine Zamorsky, through means or instruments of transportation or communication in interstate commerce or the mails, directly or indirectly, offered to sell and sold securities through the use or medium of a prospectus for which no registration statement was in effect or on file.

103.    There were no exemptions from registration, and Defendants Icon, SUNCO, Jeff

Zamorsky, Tony Aguilar, and Christine Zamorsky therefore violated Sections 5(a) and 5(c) of

the Securities Act [15 U.S.C. §§ 77e(a) and (c)].

104.    Defendants Icon, SUNCO, Jeff Zamorsky, Tony Aguilar, and Christine Zamorsky

violated, and unless restrained will violate in the future, Sections 5(a) and 5(c) of the Securities

Act [15 U.S.C. §§ 77e(a) and (c)].

## FIFTH CLAIM FOR RELIEF
### Violations of Section 15(a)(1) of the Exchange Act
### [15 U.S.C. § 78o(a)(1)]

105.    The SEC incorporates the allegations of paragraphs 1 through 90 as if fully set forth

herein.

106.    Defendants Jeff Zamorsky, Tony Aguilar, and Christine Zamorsky are natural persons.

Each of them made use of the mails or means or instrumentalities of interstate commerce to

effect transactions in or to induce or attempt to induce the purchase or sale of a security without

being registered in accordance with Section 15(a) of the Exchange Act [15 U.S.C. § 78o(a)].

107.    Defendants Jeff Zamorsky, Tony Aguilar, and Christine Zamorsky violated Section

15(a)(1) of the Exchange Act by acting as unregistered broker-dealers in connection with their

offer and sale of Icon and SUNCO fractional, undivided interests in oil and gas projects.

108.    As a result, Defendants Jeff Zamorsky, Tony Aguilar, and Christine Zamorsky violated,

and unless restrained and enjoined will in the future violate, Section 15(a)(1) of the Exchange

Act [15 U.S.C. § 78o(a)(1)].

## PRAYER FOR RELIEF

WHEREFORE, the SEC respectfully requests that the Court:

I.      Enter an Order finding that each of the Defendants committed the violations alleged in this Complaint, and unless restrained will continue to do so;

II.     Enter an Injunction, in a form consistent with Rule 65(d) of the Federal Rules of Civil Procedure, enjoining Defendants and their officers, agents, servants, employees, attorneys, fictitious trade name entities, and those persons in active concert or participation with them who receive actual notice by personal service or otherwise, from violating or any of the violations alleged;

III.    Order that Defendants disgorge all illegal gains, together with prejudgment interest;

IV.     Order that Defendants pay civil money penalties pursuant to pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d) of the Exchange Act [15 U.S.C. § 78u(d)]; and

V.      Order such other relief as this Court may deem just or appropriate.

Dated:  May 22, 2008

                              Respectfully submitted,


                              s/Nancy J. Gegenheimer
                              Nancy J. Gegenheimer
                              Kurt L. Gottschall
                              Attorneys for Plaintiff
                              U.S. Securities and Exchange Commission
                              1801 California Street, Suite 1500
                              Denver, CO 80202
                              (303) 844-1000